IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Keith A. Turner,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 09-587-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM ORDER**

1.　On August 10, 2009, the claimaint Keith A. Turner ("Turner") filed a complaint against the Social Security Administration Michael J. Astrue ("Astrue") for review of the final decision denying him disability insurance benefits and supplemental security income under the Social Security Act. (D.I. 2; D.I. 18 at 5-6.) Presently before the court is Astrue's motion for summary judgment. (D.I. 17.) For the reasons that follow, the court will grant Astrue's motion. The court will also affirm the decisions of the Administrative Law Judge ("ALJ") and the Appeals Council. The court's reasoning follows.[1]

2.　In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If a court determines that "'there is no genuine issue as to any material fact' and that the movant is entitled to judgment as a matter of law," summary

---

[1] Since the court writes primarily for the benefit of the parties, to whom the underlying facts are well-known, it will address only the facts relevant to the motions.

judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)). A court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (citation omitted). Substantial evidence is further defined as "more than a mere scintilla." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Credibility determinations are, likewise, the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, C.A. No. 00-1309 NLS, 2001 WL 793305, at *3 (D.Del. July 11, 2011) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Thus, the inquiry is not whether this court would make the same determination; but, whether the ALJ's conclusion is reasonable. In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to FED. R. CIV. P. 56(c). *Woody v. Sec'y of Health and Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

3. Turner asserts that the ALJ's decision was flawed in two respects. (D.I. 2 at 5.) Turner alleges that "The ALJ has improperly rejected claimant's testimony of disabling pain." (*Id.*) Turner further alleges that "The ALJ's rejection of the opinions of limitations by doctors Nash and DeCarli are not based on substantial evidence." (*Id.*)

4. Turner argues that the ALJ improperly rejected his own testimony, and the records of the treating physicians, relating to his chronic, disabling pain. (*Id.* at 5-6.) Astrue asserts that the ALJ properly considered and weighed the medical opinions of record. Turner

2

claims that he is disabled due to diabetes, pancreatitis, visual difficulties, dizziness, depression, high blood pressure, and hepatitis. (D.I. 2 at 3; D.I. 18 at 22.)

5. The ALJ, as the fact finder, had the exclusive responsibility for weighing the medical opinions of record. 20 C.F.R. §§ 404.1527 and 416.927. A treating physician's opinion does not have controlling weight unless it is well supported by clinical and laboratory findings and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008). Further, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

6. In the case at hand, the ALJ set forth legally sufficient reasons explaining why Dr. Andrew Nash's opinion was not given controlling weight. (Transcript of Hearing dated March 11, 2009 ("Tr.") 18, 22-25.) The ALJ noted that Turner regularly saw Dr. Nash, and after each visit, Dr. Nash indicated that "all of his conditions," including diabetes, depression, and high blood pressure, were generally stable, and that Turner was doing well. (Tr. 22-23, 647-811.) Further, Dr. Nash reported that Turner's medications were working well. (*Id.*) As such, the ALJ gave little weight to Dr. Nash's later determination that Turner was limited to walking and standing for two hours a day, and could only sit for an additional two hours each day. (*Id.*)

7. For example, there was no mention in Dr. Nash's notes of significant complaints of neuropathic pain or any specific limitations. (Tr. 24, 647-811.) In fact, Dr. Nash's notes indicate that Turner had a normal range of motion and gait. (Tr. 24, 774.) Further, Dr. Nash recommended regular aerobic activity, such as brisk walking, for thirty minutes a day. (Tr. 24, 752.) The ALJ also noted that a venous Doppler revealed no evidence of deep vein thrombosis or superficial venous insufficiency in either lower extremity. (Tr. 18, 569.) Also, x-rays and

3

MRIs of Turner's back and hip were normal. (Tr. 18, 505, 507, 509.) As such, the ALJ had substantial evidence to find that Dr. Nash's limitations on Turner's ability to sit, stand, and walk were inconsistent with not only his own treatment notes, but with the findings of other medical providers.

8. Further, Dr. Nash's opinion of Turner's disability was conclusory. On the assessment form, which cautioned that it was important to relate particular medical findings to any reduction in capacity, Dr. Nash simply indicated "see chart" and "recommend independent phys[ical] eval[uation]," where the form asked for findings that support diagnosed limitations.[2] (Tr. 24, 839-42.) Therefore, the ALJ had sufficient evidence to decline to give controlling weight to Dr. Nash's conclusory assessment.

9. The ALJ also set forth legally sufficient reasons why Dr. John F. DeCarli's opinion was not given controlling weight. (Tr. 18, 23.) The ALJ noted that Dr. DeCarli did not refer to any treatment records or laboratory reports, and that Dr. DeCarli relied upon Turner's own prognosis about the range of his blood sugars, and the degree to which his diabetes was under control.[3] (Tr. 23, 636-38.) Further, Dr. DeCarli's physical examination was generally unremarkable and did not support a two-hour workday limitation.[4] (*Id.*) Thus, the ALJ gave

---

[2] This particular form asked the physician to check off how much weight the patient could lift; how long the patient could sit, stand, or walk; how often the patient would have to change position; whether the patient could perform various postural activities or physical functions; what environmental conditions the patient should avoid; and how often the patient would likely miss work.

[3] Specifically, Dr. DeCarli notes that Turner's blood sugars are poorly controlled, "and [Turner] tells me they range anywhere from 30 to 600 on any given day."

[4] Dr. DeCarli noted that Turner had a blood pressure of 110/70; a regular heart rate and rhythm without murmurs; clear lungs; no swelling deformities, edema, tremor, or clubbing in the extremities; slightly decreased sensation in the fifth digit of the right foot; intact cranial nerves; deep tendon reflexes at a grade of 2/4 bilaterally; no limitations in achieving the supine, sitting, and standing positions; the ability to walk heel to toe with some difficulty balancing; a normal

4

little weight to Dr. DeCarli's determination that Turner could work for a maximum of two hours a day and lift no more than ten pounds. (*Id.*) For these reasons, the ALJ had substantial evidence to decline to give controlling weight to Dr. DeCarli's assessment.

10. Turner also argues that the ALJ, in rejecting the opinions of Dr. Nash and Dr. DeCarli, did not use the substantial evidence standard. (D.I. 2 at 6-7.) Astrue asserts, and the court agrees, that there was support for the ALJ's finding that Turner had the residual functional capacity for light work that accommodated his limitations due to his medical conditions. Again, Turner claims that he is disabled due to diabetes, pancreatitis, visual difficulties, dizziness, depression, high blood pressure, and hepatitis. (D.I. 2 at 3; D.I. 18 at 22.)

11. The ALJ found that Turner's diabetes did not prevent him from performing light work, as Dr. Nash's notes repeatedly indicated that Turner's diabetic condition was "stable." Further, Turner denied experiencing visual difficulties, edema, shortness of breath, loss of appetite, dysuria, skin lesions, dizziness, excessive hunger or thirst, hyperglycemia or hypoglycemia, fatigue, weight loss, or muscle weakness. (Tr. 22-23, 647-811.) The ALJ noted that the 2005 hospitalization for ketoacidosis was related to failure to take diabetes medication, and alcohol and drugs. (Tr. 22, 573, 575.)

12. Further, the ALJ found that Turner experienced an episode of pancreatitis in August 2000, which Dr. Marc D. Grobman claimed was "resolving." (Tr. 18, 447.) Further, Turner underwent a CT scan to rule out pancreatitis in December 2005, revealing a normal, unremarkable pancreas. (Tr. 18, 575, 580, 583.)

---

gait with slight favoring of the right side; ranges of motion in his joints; a grip strength of 5/5; and the ability to oppose the digits of both hands without any difficulty.

13. Next, the ALJ noted that Dr. Eugene Shifrin, an optometrist, examined Turner in March 2004. (Tr. 21, 535.) Dr. Shifrin reported to Dr. Nash that Turner's visual acuity was 20/20, and that he saw no evidence of diabetic retinopathy. (*Id.*)

14. Further, the ALJ found that Turner's depression was "stable." (Tr. 22, 647-811.)

15. For high blood pressure, the ALJ found that Turner's condition was sufficiently stabilized through medication. (Tr. 18, 647-811.)

16. The ALJ stated that treatment records could not be located for Turner's hepatitis C.[5] (*Id.*)

17. The ALJ informed the vocational expert that Turner had limitations due to diabetes, and noted that there should be restrictions on exposure to temperature extremes and to hazards, such as working near moving machinery and heights. (Tr. 22, 889.) Although Turner did not claim that his depression was disabling, the ALJ noted the limitations found by Dr. Frederick W. Kurz, the consultative examining psychologist, who indicated that Turner would have moderate limitations regarding the pace of work and with work related production quotas. (Tr. 24-25, 511-25, 584-89, 616-33.) When the ALJ noted these limitations in describing a hypothetical individual, the vocational expert identified simple, unskilled work that Turner could perform.[6] (Tr. 889-90.) The work, available in the local and national economy, included work

---

[5] Dr. Nash noted that Turner has hepatitis C, but stated that Turner is not a good candidate for treatment.

[6] The ALJ asked: "Now, if we consider a hypothetical person who is about the claimant's stated age at onset, that would be, let's say, 42 to 43 years, has a 10th grade education, is however able to read, write, and do at least simple math. This individual has certain underlying impairments that place limitation on the ability to do work-related activities at a light level of exertion and non-exertionally this person should avoid concentrated exposure to temperature extremes and to hazards, and hazards are defined as moving machinery and heights. Non-exertionally this person would require simple, unskilled work, work that would have only occasional contact with co-workers, and the general public and work that would not be at a production pace, meaning that he's paid by the piece or working at an assembly line."

6

as a light stock clerk, office cleaner, food preparer, order clerk, and credit checker.[7] (*Id.*) Thus, the ALJ produced evidence that Turner had the residual functional capacity for light, available work that accommodated his limitations due to his medical conditions.

18. Turner has also submitted a letter dated March 9, 2010 from Dr. Nash at Bayhealth Medical Center (D.I. 16 at 2), and two forms from Delaware Health and Social Services signed by "Brandywine Internal Medicine" on January 21, 2004, and May 5, 2004 (*Id.* at 3-4). On the letter dated March 9, 2010, Dr. Nash states that "to the best of [his] recollection," Dr. Nash certified Turner for disability between 2002 and 2004. (*Id.* at 2.) The letter dated January 21, 2004 supported Turner's application for public assistance benefits and Dr. Nash indicated that Turner was unable to work for three months. (*Id.* at 3.) Similarly, in the letter dated May 5, 2004, Dr. Nash indicated that Turner was unable to work for more than twelve months.[8] (*Id.* at 4.) Astrue asserts, and the court agrees, that this evidence is insufficient to warrant remand.

19. Although "after submitted evidence" cannot be used to argue that the ALJ's decision was not supported by substantial evidence, the district court can remand the case to the Commissioner if the claimant shows good cause as to why the after submitted evidence was not

---

[7] When asked if there was any simple unskilled work at a light level of exertion that a person could do in the regional or national economy, the vocational expert replied: "Yes, according to this hypothetical the person could be a light stock clerk, approximately 225 such jobs in the local economy, 181,000 nationwide. The person could be an office cleaner, approximately 350 such jobs locally, 266,000 nationwide. According to this hypothetical the person could also be in food preparation with light work in the kitchen, approximately 125 such jobs at that level, locally 75,000 nationwide." When asked if there was any sedentary work that the person could do that would fit within the parameters of the hypothetical, the vocational expert replied: "That person could be an order clerk at the unskilled level. At that level there's approximately 30 in the local economy, 44,000 nationwide. A person could be a credit checker. Again, at the unskilled level there'd be approximately 50 such jobs locally, 11,000 nationwide."

[8] Both forms contain diagnoses of diabetes mellitus, hypertension, and hypercholesterolemia. Dr. Nash checked off boxes in four out of five relevant questions. Nevertheless, there are no other remarks.

7

presented to the ALJ. 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). The after submitted evidence can only be considered to determine whether it provides a basis for remand under Sentence Six of 42 U.S.C. § 405(g). *Matthews*, 239 F.3d at 593-94 (citing *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)). Thus, to justify remand, the after submitted evidence must be "new" and "material," and the plaintiff must show "good cause" for not having incorporated the evidence into the administrative record. *Id.* After submitted evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Further, to be "new," the evidence must not be merely cumulative of the evidence already contained in the record. *Szubak*, 745 F.2d at 833. To be "material," the after submitted evidence must be reasonably likely to change the ALJ's decision. *Id.*

20. The ALJ issued its decision on March 31, 2009. (Tr. 12-27.) The Appeals Council's order was issued on June 25, 2009. (Tr. 7-10.) The Delaware Health and Social Services forms, available at the time of the administrative proceedings, are dated January 21, 2004 and May 5, 2004. (D.I. 16 at 3-4.) Further, Dr. Nash's letter, dated March 9, 2010, is cumulative of what is already in the record because it simply states that "to the best of [his] recollection," Dr. Nash certified Turner for disability between 2002 and 2004. (*Id.* at 2.) Thus, this after submitted evidence is not "new."

21. Additionally, Dr. Nash's letter and the two Delaware Health and Social Services forms are not reasonably likely to change the ALJ's decision. These forms, "in which [the] physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065. Further, the ALJ already offered several reasons, based on evidence in the record, for not giving Dr. Nash's opinion controlling weight. 20 C.F.R. §§ 404.1527(e) and

8

416.927(e); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). As such, this after submitted evidence is not "material."

22. Further, Turner has not shown good cause as to why the after submitted evidence was not presented to the ALJ. 42 U.S.C. § 405(g); *Matthews*, 239 F.3d at 594.

Therefore, IT IS HEREBY ORDERED THAT:

1) Astrue's motion for summary judgment (D.I. 17) is GRANTED.

2) The ALJ's opinion is AFFIRMED.

3) The Appeals Council's opinion is AFFIRMED.

Dated: May 25, 2012

                                      CHIEF, UNITED STATES DISTRICT JUDGE